**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NAILAESHA YOUNGBLOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 9843 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| OFC. COLLINS #345, SGT. MICHAEL | ) | |
| MCNEELA #674, OFC. THOMAS | ) | |
| MCMAHON #416, Individually, and the | ) | |
| VILLAGE OF OAK LAWN, a Municipal | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Oak Lawn police officers attempted to stop a stolen car in which Plaintiff Nailaesha

Youngblood rode as a passenger. The car fled and ultimately came to a stop after crashing into

another car. After the crash, Oak Lawn Police Officers Collins, McNeela, and McMahon (the

"Defendant Officers") removed Youngblood from the car, arrested her, and found a firearm in

the back seat of the car. Youngblood had firearms and criminal trespass charges filed against

her. After the State dismissed the charges, Youngblood filed this § 1983 civil rights suit against

the Defendant Officers and the Village of Oak Lawn (the "Village"). She brings claims against

the Defendant Officers for excessive force, false arrest, malicious prosecution, and unlawful

pretrial detention under the Fourth and Fourteenth Amendments, as well as a malicious

prosecution claim under state law. She also brings claims for indemnification and *respondeat*

*superior* against the Village. Defendants have filed a motion to dismiss the complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6). The Court finds that Youngblood has sufficiently

alleged an excessive force claim but cannot proceed on her other claims against the Defendant

Officers. And because the excessive force claim proceeds, the Village must remain in the case for indemnification purposes.

## BACKGROUND[1]

On Sunday, August 20, 2023, Youngblood and several other family members planned to attend a cousin's birthday party in Crestwood, Illinois. Youngblood received a ride from her cousin, Valence Tyana Upshaw ("Tyana"). Upshaw also had Jatoine Upshaw ("Jatoine") and Bishop Nance in the car with her. Neither Jatoine nor Youngblood had met Nance before this.

As a paraplegic with impaired motor function in her lower extremities, Youngblood uses a wheelchair. Jatoine helped Youngblood into the back passenger-side seat of the car. Someone placed Youngblood's wheelchair in her mother's car, with the intention of retrieving it once they all arrived at the party. Jatoine sat in the back seat behind the driver, and Nance sat in the front passenger seat.

While driving near South Cicero Avenue and 106th Street in Oak Lawn, Oak Lawn police officers attempted to initiate a traffic stop of Tyana's car based on a stolen car alert.

---

[1] The Court takes the facts in the background section from Youngblood's complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Here, Defendants attached video footage and other documents to the motion to dismiss. Although not specifically referred to in the complaint, in her response, Youngblood admits to the authenticity of the videos and relies on the video evidence in support of her claims. The Court therefore understands that Youngblood does not object to the consideration of the additional exhibits that Defendants attached to their motion to dismiss and takes the exhibits into consideration in resolving the motion. *See Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024) (finding that "it was appropriate for the district court to consider the body-worn camera video evidence when considering this motion to dismiss" where the plaintiff "relied on it for the allegations in his complaint"); *Avitia v. City of Chicago*, No. 23 CV 15957, 2024 WL 2274101, at *4 (N.D. Ill. May 20, 2024) (considering video footage where the plaintiff did not object to its authenticity or the Court's consideration of it). The Court only considers "facts readily apparent from the videos," however. *Tate v. City of Chicago*, No. 19 C 7506, 2020 WL 6715660, at *1 (N.D. Ill. Nov. 16, 2020). The Court also considers the documents that Youngblood attached to her response. *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001).

Tyana initially came to a stop, but as officers approached the car, she drove away. Jatoine asked Tyana to explain why she drove away from the police, but she did not respond. The Oak Lawn police officers did not give chase. But Tyana sped into traffic on Cicero Avenue, and a pickup truck struck the car.

Shortly after the accident, the Defendant Officers pulled up to the scene and steeped out of their police cars, approaching Tyana's vehicle on foot. McMahon saw Nance standing outside the rear driver side door and Tyana sitting on the ground, leaning against the same door. McNeela approached with his service firearm aimed at Jatoine and Youngblood in the back seat, ordering them to show their hands. Although Nance shouted that Youngblood was paralyzed, McNeela repeated his command. Collins then approached the vehicle, opened the rear passenger door, pulled Youngblood out of the car, and threw her to the ground. Collins ignored Youngblood's statements that she was paralyzed, becoming more agitated as Youngblood failed to get out of the car on her own. Youngblood maintains that she hit her head on the pavement and hurt her left shoulder. She also states that Collins dragged her across the pavement, causing abrasions and contusions. Youngblood questioned the Defendant Officers' aggressive conduct, but she did not threaten the officers' safety. Collins told McMahon to restrain and handcuff Youngblood. McMahon did so with McNeela's help, but he had a hard time keeping Youngblood from falling down. McMahon and McNeela then offered to move Youngblood onto the sidewalk near the entrance to a strip mall. They lifted her off the ground by her arms and legs, seating her in a small patch of grass. According to Youngblood, McMahon and McNeela repeatedly let her fall to the ground while her hands remained handcuffed behind her back, causing her to strike her head and receive additional abrasions and contusions. Ultimately,

3

McMahon and McNeela moved Youngblood to a patch of wood chips and leaned her against the base of a signpost. Youngblood did not resist arrest or strike, punch, or kick any officer.

During a search of the car, McNeela found a gun in the rear driver side back seat near the headrest, partially concealed behind a deployed airbag. Collins removed the firearm from the car. McMahon indicated that Nance had placed it there, as McMahon had seen Nance standing outside the car and backing away from the open rear driver side window. Another officer believed that he saw Tyana put the firearm where the officers found it.

The officers took Youngblood to Advocate Christ Medical Center for medical treatment and then to the Oak Lawn police station, where she remained detained for approximately three days. Youngblood gave statements to the Defendant Officers acknowledging that she owned a firearm and had a valid FOID card.

McMahon swore out complaints against Youngblood on August 21, 2023 for aggravated unlawful use of a weapon ("UUW") in violation of 720 Ill. Comp. Stat. 5/24-1.6 and criminal trespass to a motor vehicle in violation of 720 Ill. Comp. Stat. 5/21-2. In the complaints, McMahon stated that Youngblood "knowingly possessed . . . a loaded, not cased, and immediately accesible [sic] GLOCK 43 9mm hadgun [sic], Serial Number #:AGDZ920, Blk/Purp finish at the time of the incident," that she had a valid FOID card but no concealed carry license, and that the gun was "recovered in the backseat with Youngblood." Doc. 27-2 at 1. The complaint also alleged that Youngblood "knowingly, and without authority, entered a motor vehicle" belonging to someone else. *Id.* at 2. Youngblood ultimately faced four counts of aggravated UUW in violation of 720 Ill. Comp. Stat. 5/24-1.6 and one count of criminal trespass to a motor vehicle in violation of 720 Ill. Comp. Stat. 5/21-2.

4

On September 15, the state court held a preliminary hearing on the aggravated UUW charge against Youngblood. McMahon testified that the Defendant Officers learned that Youngblood traveled in a stolen car and that, upon searching the car, the Defendant Officers found a firearm in the driver's side back seat by the door. McMahon further testified that Youngblood made a statement after her arrest acknowledging that she owned a Glock firearm, had a FOID card, and did not have a conceal carry license. According to McMahon, Youngblood's description of her firearm matched the one they found in the car.[2] The court found probable cause for the aggravated UUW charge because Youngblood sat in the rear of the car where officers found the gun and Youngblood admitted to owning the gun. The court did not find the fact that officers found the gun on the driver's side while Youngblood sat on the passenger's side mattered to the probable cause determination.

At a motion to suppress hearing, McMahon testified that the Defendant Officers had learned that Youngblood traveled in a stolen car from a Flock camera report and that they recovered a Glock 43 from the rear seat on the driver's side of the car. McNeela testified to receiving the information about the stolen vehicle, as well as that the Defendant Officers detained Youngblood because she was an occupant of a stolen car. The State dismissed the charges against Youngblood on the scheduled first day of trial, September 24, 2024.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

---

[2] Youngblood alleged in her complaint that the firearm was of a different caliber than that she owned, but Defendant submitted documentation showing that the recovered firearm belonged to her.

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Excessive Force (Count I)

"Excessive force is a form of unreasonable seizure in violation of the Fourth Amendment." *Tate v. City of Chicago*, No. 19 C 7506, 2020 WL 6715660, at *4 (N.D. Ill. Nov. 16, 2020). These types of claims "are evaluated based on whether the officer's actions were objectively reasonable under the circumstances." *Watson v. Fulton*, No. 15 C 11559, 2020 WL 1248678, at *6 (N.D. Ill. Mar. 16, 2020) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "[C]ourts give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations," but "[that] latitude ends . . . when police officers employ force that is clearly excessive or unreasonable under the circumstances." *Baird v. Renbarger*, 576 F.3d 340, 342 (7th Cir. 2009). Reasonableness "must be judged from the perspective of a reasonable officer on the scene" and not on hindsight. *Graham*, 490 U.S. at 396. The "proper application [of the standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The Court

analyzes each incident of excessive force separately, considering "if the officer was reasonable at each stage." *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994).

### A. McNeela Pointing His Gun at Youngblood

First, Youngblood contends that McNeela used excessive force when he pointed his gun at her when he arrived at the scene of the collision. "[G]un pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." *Baird*, 576 F.3d at 345. That said, police "are allowed to [point their guns] when there *is* reason to fear danger." *Id.* at 346. Defendants argue that McNeela's gun-pointing cannot constitute excessive force because a reasonable threat of danger existed at the time he approached the car. Youngblood argues, however, that the threat had dissipated and the Defendant Officers should have rendered assistance to the passengers of the car instead of pointing guns at them.

Youngblood's attempt at reframing the facts in her response as a dissipated threat ignores her admission that the car in which she rode had fled a police stop and caused a collision, with two of the occupants having then jumped out of the vehicle. Two individuals remained in the car, with an airbag obstructing one side and the Defendant Officers unaware of whether any of the four individuals had weapons on them. The video footage indicates that McNeela had his gun out for approximately one minute as he approached the car and ordered Youngblood and Jatoine to show their hands. McNeela placed his gun back in its holster once both individuals were out of the car and on the ground, "suggesting that he used only the amount of a threat of force necessary to secure" Youngblood and Jatoine. *See Teague v. Wozniak*, No. 2:25-CV-160, 2026 WL 570485, at *8 (N.D. Ind. Mar. 2, 2026) (collecting cases). As such, the video footage incontrovertibly establishes that McNeela's brief pointing of the gun was objectively reasonable under the circumstances, as the situation presented a threat of danger to the Defendant Officers

before they secured all four individuals in custody. *See id.* (dismissing excessive force claim based on pointing of taser at the plaintiff where video footage showed that the plaintiff was uncooperative and so posed a threat of danger to the defendant officers until he was restrained); *cf. Jacobs v. City of Chicago*, 215 F.3d 758, 773–74 (7th Cir. 2000) ("Under existing Seventh Circuit and Supreme Court precedent at the time the use of force occurred in this case, it appears to be clearly unreasonable for the Defendant Officers to have pointed a loaded weapon at Jacobs for an extended period of time when they allegedly had no reason to suspect that he was a dangerous criminal, or indeed that he had committed any crime at all, Jacobs was unarmed, and when Jacobs had done nothing either to attempt to evade the officers or to interfere with the execution of their duties."). Therefore, Youngblood cannot proceed on an excessive force claim against McNeela for pointing his gun at her.

### B. Collins Removing Youngblood from the Car

Next, Youngblood claims that Collins used excessive force when he removed her from the car. She specifically alleges that he "ripped [her] from her seat, pulling her out of the vehicle and throwing her to the ground," and "dragged [her] across the pavement, causing abrasions and contusions." Doc. 1 ¶¶ 25, 33, 62–65. The Defendant Officers argue that the video footage disproves these allegations, failing to show that Collins threw Youngblood to the ground or dragged her across the pavement, or that she hit her head in the process.[3] The Defendant Officers also maintain that while Collins did indeed remove Youngblood from the car, he used an appropriate amount of force in doing so.

---

[3] Youngblood admits in her response that she erred in alleging that her shoe came off as Collins pulled her out of the car, and so she asks to strike paragraph 31 of the complaint. She also acknowledges that Collins ordered her out of the vehicle four times instead of five as alleged in the complaint, *see* Doc. 1 ¶ 28, but she notes that video footage indicates that Collins additionally ordered her to the ground one time. Doc. 27 at 6. The Court appreciates Youngblood's acknowledgment of these minor inconsistencies.

Unlike with the gun pointing, the Court cannot find that the video conclusively shows that Collins did not use excessive force. Collins admits that he pulled Youngblood out of the vehicle, and the reasonableness of that force is something that the parties must explore further in discovery. While the Defendant Officers maintain that Collins did not drag Youngblood across the pavement or throw her to the ground, the video footage does not fully capture the interaction. Further, as Youngblood points out, McMahon's body worn camera captures her stating "you dragged me . . . made me hit my head," and "y'all hit my head really hard," in reference to Collins' actions in removing her from the car and getting her on the ground. Doc. 16-4 at 1:40–1:45, 2:06–2:10. Because the Court cannot resolve factual disputes at the motion to dismiss stage, this portion of the excessive force claim must proceed to discovery.

### C. McMahon and McNeela Allowing Youngblood to Fall and Strike the Ground while Handcuffed

Finally, Youngblood contends that McMahon and McNeela used excessive force because they placed her in handcuffs and did not ensure that, while handcuffed, she did not fall and strike the ground. The Defendant Officers again contend that the video evidence incontrovertibly disproves these allegations, showing instead that McMahon and McNeela kept Youngblood from falling, that they took care to move Youngblood gently, and that Youngblood never struck the ground.

Indeed, video footage shows that Youngblood sat up unassisted with handcuffs for extended periods of time, and that McMahon and McNeela both propped Youngblood up at various points while she remained handcuffed. It also shows McMahon and McNeela asking Youngblood how she needs help and suggesting other places to place her while the Defendant Officers continued to investigate the scene. While the Court highly doubts that Youngblood will be able to prove an excessive force claim against McMahon and McNeela for their handling of

9

her while handcuffed, the Court hesitates to find this at the motion to dismiss stage.  Unlike the gun pointing situation, the video footage and accompanying allegations do not indisputably demonstrate that Youngblood never fell and hit her head while handcuffed.  Instead, at least one video angle suggests that Youngblood may have hit her head on the ground, and the video also shows her lurching forward on several occasions.  Given this factual dispute, the Court will allow the claim to proceed.[4]

## II.     False Arrest and Unlawful Detention (Counts II and V)

To state a false arrest or detention claim under § 1983, Youngblood must allege that the Defendant Officers did not have probable cause to arrest or detain her.  *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." (quoting *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010))); *Glass v. Vill. of Maywood*, No. 22 C 164, 2024 WL 4007643, at *6 (N.D. Ill Aug. 30, 2024) ("The existence of probable cause defeats claims for false arrest [and[ unlawful pretrial detention[.]").  A police officer has probable cause to arrest or detain a person if, at the time of the arrest or detention, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  The Seventh Circuit has emphasized that the probable cause inquiry is "purely objective," and "the officer's

---

[4] The Defendant Officers note that Youngblood has not explained how any of the complained of actions "constitute excessive force under the circumstances, or any force at all."  Doc. 28 at 4.  Given that the Court finds a dispute as to the characterization of the video footage, the Court rejects the Defendant Officers' framing of the issue but cautions Youngblood that, at summary judgment, she will have to establish how McMahon and McNeela's actions in allegedly allowing her to fall amount to excessive force.

subjective state of mind and beliefs are irrelevant." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013).

Even just considering Youngblood's allegations, without also taking into account the video footage, the Court finds that Youngblood has pleaded herself out of court as to her false arrest and unlawful detention claims. *See Jones v. Gonzalez*, No. 22-cv-1333, 2023 WL 4549508, at *6 (N.D. Ill. July 14, 2023) ("By admitting the existence of probable cause, Jones has punched his own ticket out of the courthouse."). Indeed, Youngblood essentially admits this in her response, failing to put up much counterargument as to the dismissal of the § 1983 false arrest and unlawful detention claims. Doc. 27 at 10–11.

Youngblood acknowledges that "[p]robable cause for any offense negates false arrest claims, even if specific charges lack sufficient probable cause." *Id.* at 10 (citing *Abbott*, 705 F.3d at 721). Under Illinois law, misdemeanor criminal trespass to vehicles occurs when a person "knowingly and without authority enters any part of or operates any vehicle." 720 Ill. Comp. Stat. 5/21-2(a). Here, the complaint indicates that the Defendant Officers attempted to stop the car in which Youngblood rode because they received a stolen car alert, but the car fled the stop and caused a collision. Although Youngblood maintains that she did not know that the car was stolen, that does not affect the probable cause inquiry with respect to her arrest, as the facts known to the Defendant Officers at that time sufficiently provided them with probable cause to arrest all the passengers in the vehicle for criminal trespass in violation of 720 Ill. Comp. Stat. 5/21-2.

As for her detention at the Oak Lawn police department, Youngblood also appears to concede that probable cause existed in her response to the motion to dismiss. At this time, the Defendant Officers had recovered the firearm and learned it matched one that Youngblood

11

owned. Youngblood does not even address the question of probable cause with respect to the aggravated UUW charges. Nor does she argue that the Court should consider whether probable cause to detain existed as to both charges, as she does with respect to the malicious prosecution claim, which the Court discusses below. *See Lietzow v. Vill. of Huntley*, No. 17 CV 05291, 2023 WL 2954989, at *16 (N.D. Ill. Apr. 14, 2023) ("[P]robable cause to detain an individual on one charge defeats a § 1983 claim for illegal pretrial detention regardless of whether there is probable cause for any additional charges."); *Haynes v. City of Chicago*, No. 21 C 4643, 2022 WL 1016392, at *1, 3 (N.D. Ill. Apr. 5, 2022) (dismissing § 1983 claim premised on officers charging the plaintiff with knowingly possessing a firearm where the "[o]fficers unquestionably had probable cause to arrest and detain Haynes for driving on a suspended license, defeating his unlawful pretrial detention claim"). Therefore, the Court dismisses Youngblood's false arrest and unlawful detention claims.

### III.     Federal and State Law Malicious Prosecution (Counts III and IV)

Youngblood's malicious prosecution claims under federal and state law require similar elements. A Fourth Amendment malicious prosecution claim requires "that criminal proceedings (1) were instituted without probable cause and (2) for a malicious motive; (3) ended without a conviction; and (4) resulted in the plaintiff's seizure by government officials." *Jackson v. City of Chicago*, No. 22 C 4337, 2024 WL 5264703, at *3 (N.D. Ill. Dec. 31, 2024). To state a claim for malicious prosecution under Illinois law, "the plaintiff must allege that: (1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant instituted the proceeding without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured." *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (citations omitted).

Unlike with the false arrest and unlawful detention claims, "the presence of probable cause for one charge does not automatically defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561 (2024). The same applies for a state law malicious prosecution claim. *See Holmes v. Vill. of Hoffman Ests.*, 511 F.3d 673, 682 (7th Cir. 2007) (predicting that Illinois would follow the same rule, that "probable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge").

The Defendant Officers argue that Youngblood has not sufficiently alleged the Defendant Officers' roles in the prosecution and any specific actions each of them took to influence the prosecution decision. They also argue that Youngblood has not sufficiently alleged malice or a lack of probable cause.[5] In her response, Youngblood narrows her malicious prosecution claims to the criminal trespass to vehicle charge and limits it to McMahon and McNeela. She points out that McMahon signed the criminal complaints against her and testified at the preliminary and motion to suppress hearings, and that McNeela testified at the motion to suppress hearing. *See Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 949 (N.D. Ill. 2014) ("Police officers may be liable for malicious prosecution if they either signed a criminal complaint or played a significant role in causing the prosecution of the plaintiff[.]" (quoting *Davis v. Fenimore*, No. 09 CV 939, 2010 WL 1489988, at *4 (N.D. Ill. Apr. 13, 2010))); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 928–29 (N.D. Ill. 2013) (police officers commenced or continued a prosecution where they signed police reports and the criminal complaint, and supplied the only evidence on which the prosecutor relied). As for malice, Youngblood contends that she has alleged that McMahon and

[5] The Defendant Officers do not make any arguments about whether Youngblood has alleged a seizure sufficient for her Fourth Amendment malicious prosecution claim, which requires some form of detention after the initiation of legal process. *Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025).

13

McNeela acted maliciously to "cover their own misconduct in the incident." Doc. 1 ¶ 95. "[M]alice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011).

The Court thus focuses on probable cause. "For purposes of a malicious prosecution claim, the pertinent time for making the probable cause determination is the time when the charging document is filed, rather than the time of the arrest." *Id.* at 254 (7th Cir. 2011). As discussed above, under Illinois law, misdemeanor criminal trespass to vehicles occurs when a person "knowingly and without authority enters any part of or operates any vehicle." 720 Ill. Comp. Stat. 5/21-2(a). The Defendant Officers argue that Youngblood's claim that she did not know the car was stolen does not affect the reasonableness of their belief that Youngblood committed the offense because "knowledge is not an element of the offense." Doc. 16 at 22. But while the case that the Defendant Officers cite indicates that "knowledge that a vehicle is stolen is not an element of the criminal trespass to a vehicle offense," *People v. Kelly*, 2021 IL App (1st) 191245-U, ¶ 31 the Defendant Officers conveniently ignore that the same case emphasizes that "[t]he gravamen of the charge is a *knowing* entry of a vehicle of another *without authority*," *id.* ¶ 26 (emphasis added) (quoting *People v. Barnes*, 48 Ill. App. 3d 226, 228 (1977)).

Nonetheless, Youngblood's potential defense to the charge did not negate probable cause. That is because, "once a law enforcement officer discovers sufficient facts to establish probable cause, he has no constitutional obligation to conduct any further investigation in the hope of discovering exculpatory evidence or possible defenses." *Schimandle v. Dekalb Cnty. Sheriff's Office*, 114 F.4th 648, 659 (7th Cir. 2024). While McMahon and McNeela could not "ignore conclusively established evidence of the existence" of a defense, *Hodgkins ex rel. Hodgkins v.*

14

*Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004), Youngblood's "ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial," *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 577 (7th Cir. 2009). Given that McMahon and McNeela had received a stolen car alert, observed that car flee a traffic stop and cause a collision, and found a gun in the car, they could rely on this circumstantial evidence to support probable cause for the misdemeanor criminal trespass charge. As such, Youngblood cannot proceed with her malicious prosecution claims.

## IV. Qualified Immunity

The Court next turns to whether qualified immunity bars Youngblood's only viable claim: excessive force against Collins with respect to his removal of Youngblood from the car and against McNeela and McMahon for allowing Youngblood to fall and strike the ground while handcuffed. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (citation omitted) (internal quotation marks omitted). "In other words, qualified immunity shields from liability police officers who act in ways that they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)) (internal quotation marks omitted). At the motion to dismiss stage, to overcome an assertion of qualified immunity, Youngblood must have alleged a violation of a statutory or constitutional right that was clearly established at the time of the violation so that a reasonable officer would have known of the unlawfulness of his conduct. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). "Because a qualified immunity defense so closely depends 'on the facts of the case,' a 'complaint is generally not

dismissed under Rule 12(b)(6) on qualified immunity grounds.'" *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (citation omitted).

Here, while the Defendant Officers claim qualified immunity on all § 1983 claims, they do not provide any argument as to why the Court should find qualified immunity with respect to the excessive force claims. Therefore, they have waived this argument at this time. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Further, as discussed above, Youngblood has presented sufficient allegations to proceed on her excessive force claims against the Defendant Officers. And under Youngblood's presentation of the facts, a reasonable officer would have known of the constitutional violation. *See Abbott*, 705 F.3d 706, 732 (7th Cir. 2013) ("Prior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects."); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("It is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."). Therefore, although Youngblood may have difficulty establishing her excessive force claims against the Defendant Officers, the Court cannot dismiss them at the pleadings stage.

## V.      Claims against the Village (Counts VI and VII)

The Village argues that the claims against it fail because Youngblood has not stated a viable claim against the Defendant Officers. *Respondeat superior* and indemnification are "derivative liability claims that rise or fall" with the claims against the Defendant Officers.

*Brown v. City of Chicago*, 709 F. Supp. 3d 558, 580 (N.D. Ill. 2023). The Court agrees that Youngblood cannot pursue a *respondeat superior* claim against the Village given the dismissal of her state law malicious prosecution claim and the inability to hold a municipality liable based on *respondeat superior* under § 1983. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). But because the Court allows Youngblood's excessive force claims to proceed, the Village must remain as a Defendant for indemnification purposes.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [15]. The Court dismisses the false arrest, malicious prosecution, unlawful pretrial detention, and *respondeat superior* claims (Counts II, III, IV, V, and VII) and the excessive force claim based on McNeela pointing his gun at Youngblood (part of Count I).

Dated: June 10, 2026

_____
SARA L. ELLIS
United States District Judge

17